**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

MATTHEW A. JAMESON,

    Plaintiff,

v.                                                      Case No. 10-10366

OAKLAND COUNTY, et al.,

    Defendants.
                                                        /

**OPINION AND ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

This case alleges that a search and seizure pursuant to a warrant was conducted in a way that violated various property rights of Plaintiff—and others—and Defendants' motion for summary judgment is before the court fully briefed. On July 6, 2011, the court ordered additional briefing on an issue not raised by the parties. Specifically, the court expressed doubt about whether this litigation could survive scrutiny under *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986), and *Hudson v. Palmer*, 468 U.S. 517 (1984), in which the Supreme Court has taught that no federal due process claim can be brought under 42 U.S.C. § 1983 where the allegedly problematic conduct was "random and unauthorized" and the state provides adequate postdeprivation process.

Both sides timely responded on July 15, 2011, although for some reason Plaintiff declined the invitation to address either *Parratt*, *Hudson*, or their implications. A hearing on the motion is not necessary. E.D. Mich. LR 7.1(f)(2). For the following reasons, this case will terminate on grounds not raised in the motion. *See* Fed. R. Civ. P. 56(f)(2).

**I. BACKGROUND**

On March 20, 2007, the Oakland County Narcotics Enforcement Team ("NET"), a joint task force comprised of law enforcement officers from different agencies, executed a search warrant at Plaintiff's home.  Dissatisfied with the officers' treatment of his property during and following the search, Plaintiff filed this lawsuit, alleging two counts: Plaintiff was deprived of property without due process of law, contrary to 42 U.S.C. § 1983, and also the officers were grossly negligent, leading to liability under Mich. Comp. Laws § 691.1407(2).  In particular, Plaintiff claims damage to or complete deprivation of the following chattel: a recreational vehicle ("RV"), a 1995 Starcraft boat, six digital video discs ("DVDs"), eleven or twelve boxes of ammunition, two printer ink cartridges, a Home Depot credit card, an iPod, ten compact discs ("CDs"), a 2007 Saturn Aura, and a cell phone.  (Compl. ¶¶ 43-59.)  He also claims that the police officers' dog[1] defecated on the floor of the home, and Plaintiff "was forced to contend with [the waste] upon his return."  (*Id.* ¶¶ 60-61.)

On February 17, 2010, the court declined to exercise supplemental jurisdiction over, and dismissed, Plaintiff's state-law claim.  Because Plaintiff did not diligently attempt to serve all Defendants, several of the individual Defendants were dismissed on

---

[1] Plaintiff initially named the dog as an actual defendant in this suit and referred to the animal as "Detective Christie."  The court thought that there may have been a misapprehension about the identity of "Detective Christie," but, no, Plaintiff's complaint made quite clear that he was suing a dog.  He later agreed to a dismissal.  Animals are simply not capable of suing or being sued, a principle recognized, as applied to whales and dolphins, even in the Ninth Circuit.  *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1171 (9th Cir. 2004) ("[T]he world's cetaceans [do not] have standing to bring suit in their own name under the Endangered Species Act, the Marine Mammal Protection Act, the National Environmental Protection Act, and the Administrative Procedure Act.").

August 25, 2010. A handful of discovery motions were resolved and the dispositive motion deadline was extended twice. On April 11, 2011, Defendants filed the pending motion. Plaintiff responded on May 2, 2011, and Defendants replied on May 12, 2011. As noted, Plaintiff and Defendants each filed a supplemental brief on July 15, 2011, pursuant to an order from the court.[2]

## II. STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In deciding a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Sagan v. United States*, 342 F.3d 493, 497 (6th Cir. 2003). "Where the moving party has carried its burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the nonmoving party, do not raise a genuine issue of material fact for trial, entry of summary judgment is appropriate." *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)).

The court does not weigh the evidence to determine the truth of the matter, but rather to determine if the evidence produced creates a genuine issue for trial. *Sagan*, 342 F.3d at 497 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

---

[2] Plaintiff's supplemental brief contains, almost exclusively, arguments urging a finding of municipal liability, and no argument that addresses the issue on which the court requested briefing. It is moderately interesting, but ultimately useless.

"The moving party discharges its burden by '"showing"—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case.'" *Horton v. Potter*, 369 F.3d 906, 909 (6th Cir. 2004) (quoting *Celotex*, 477 U.S. at 325). The burden then shifts to the nonmoving party, who "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party must put forth enough evidence to show that there exists "a genuine issue for trial." *Horton*, 369 F.3d at 909 (internal quotation marks omitted) (citing *Celotex*, 477 U.S. at 324). Summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury." *Anderson*, 477 U.S. at 251-52.

The existence of a factual dispute alone does not, however, defeat a properly supported motion for summary judgment; the disputed factual issue must be material. *See id.* at 252 ("The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict—'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed.'" (alteration in original) (quoting *Improvement Co. v. Munson*, 81 U.S. 442, 448 (1872))). A fact is "material" for purposes of summary judgment when proof of that fact would establish or refute an essential element of a claim or a defense advanced by either party. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984).

### III. DISCUSSION

#### A. Standing

4

Although they do not label it as such, Defendants unequivocally raise the question of Plaintiff's standing to recover for damage inflicted on the RV and boat. (Mot. Br. 13.) All parties agree that Plaintiff does not own either the RV or the boat allegedly harmed by Defendants. (*Id.*; Resp. Br. 3-4.) Because, without an ownership interest, he has not himself suffered an injury in fact, Plaintiff lacks Article III standing to sue with respect to this chattel. *See Siebert v. Severino*, 256 F.3d 648, 655 (7th Cir. 2001); *Allstate Ins. Co. v. Thrifty Rent-A-Car Sys., Inc.*, 249 F.3d 450, 456-57 (6th Cir. 2001); *see also Warth v. Seldin*, 422 U.S. 490, 499 (1975) ("[E]ven when the plaintiff has alleged injury sufficient to meet the 'case or controversy' requirement, this Court has held that the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.").

### B. Section 1983

Section 1 of the Fourteenth Amendment to the Constitution provides in relevant part that "nor shall any State deprive any person of life, liberty, or property, without due process of law." This provision is enforceable through 42 U.S.C. § 1983, which prohibits any person, acting under color of state law, from depriving another of the "rights, privileges, or immunities secured by the Constitution." Therefore, to recover on this first count, Plaintiff "must show that he was deprived of a constitutionally-protected property . . . interest and that the deprivation occurred without due process." *Kennedy v. City of Cincinnati*, 595 F.3d 327, 334 (6th Cir. 2010) (citing *Zinermon v. Burch*, 494 U.S. 113, 125 (1990)).[3]

---

[3] Plaintiff's complaint also alleges violations of his rights secured by the Fourth and Fifth Amendments to the Constitution. (Compl. ¶¶ 67, 70.) However, these

"In procedural due process claims, the deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law.*" *Zinermon*, 494 U.S. at 125. Often when the state deprives a person of property, the deprivation can be foreseen because in the usual case the class of deprivation (of which the particular deprivation is a member) is effected according to established state procedures—such as where a tenant is evicted, *see Thomas v. Cohen*, 304 F.3d 563, 578-80 (6th Cir. 2002), or where a figure skating instructor is suddenly barred from teaching at a public rink, *Mertik v. Blalock*, 983 F.2d 1353, 1366-67 (6th Cir. 1993). In these cases, the process that is due typically must be provided prior to the deprivation. *Zinermon*, 494 U.S. at 132. In other cases, however, the actions of agents of the state are "random" and "unauthorized," and therefore the acts cannot be predicted ex ante. *Id.* at 115.

Accordingly, the Supreme Court reasoned in *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986), and in *Hudson v. Palmer*, 468 U.S. 517 (1984), that where a deprivation occurs through

---

paragraphs of the complaint in substance allege procedural due process claims founded on the conduct of state actors. In addition, Plaintiff's arguments on summary judgment are also only directed toward these procedural due process allegations. In fact, in his deposition, Plaintiff admitted he did not challenge the validity of the search warrant or assert a violation of the Fourth Amendment. (*See* Mot. Br. Ex. A, Jameson Dep. at 16-17.) Therefore, his complaint fairly states only a claim under the Fourteenth Amendment. *See Scott v. Clay Cnty., Tenn.*, 205 F.3d 867, 873 n.8 (6th Cir. 2000) ("The Fourteenth Amendment's Due Process Clause restricts the activities of the states and their instrumentalities; whereas the Fifth Amendment's Due Process Clause circumscribes only the actions of the federal government."). To the extent that his complaint can be read otherwise, Plaintiff has abandoned those claims.

random and unauthorized acts, the state has not run afoul of the Due Process Clause unless there is no adequate postdeprivation process. *Hudson*, 468 U.S. at 533 (rule applies to intentional deprivations); *Parratt*, 451 U.S. at 543-44 (negligent deprivations). The state must have an opportunity to provide process, and where that cannot be accomplished before the deprivation, the state gets a chance afterward. Postdeprivation process may include, for example, a state-law tort remedy capable of making the plaintiff whole. *See Zinermon*, 494 U.S. at 115; *Fox v. Van Oosterum*, 176 F.3d 342, 349 (6th Cir. 1999). Where adequate postdeprivation process exists, no § 1983 due process action will lie. Therefore, the § 1983 plaintiff must plead and prove (or at the very least assert) the absence of adequate postdeprivation process in cases where the deprivation is random and unauthorized. *Macene v. MJW, Inc.*, 951 F.2d 700, 705 (6th Cir. 1991).

Random and unauthorized acts are those taken by officials outside of an "established state procedure" for depriving an individual of property. *Zinermon*, 494 U.S. at 130; *Mitchell v. Fankhauser*, 375 F.3d 477, 481 (6th Cir. 2004); *see Macene*, 951 F.2d at 705-06. For example, the Court found the acts complained of to be random and unauthorized where a prison negligently lost a prisoner's mail, *Parratt*, 451 U.S. at 541, and where a prison guard intentionally destroyed an inmate's property, *Hudson*, 468 U.S. at 533, but not where the state afforded broad discretion to officials in civilly committing the mentally ill, *Zinermon*, 494 U.S. at 136-38, or where a former employee's wrongful termination suit was dismissed because the state employment commission failed to timely hold a hearing on the complaint, *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 435-36 (1982).

As the facts of *Zinermon* illustrate, where state actors have been endowed with ample discretion under state law, the realms of established state procedure and of random and unauthorized acts may seem to run into one another.  *See* 494 U.S. at 138 (rejecting petitioners' argument that their conduct was "unauthorized").  At some point, a state actor's serious error, even though discretionary, looks awfully unauthorized, if not "random."

Predictability distinguishes those cases where the act is random and unauthorized from those where the act is executed pursuant to established state procedures.  As is discussed above, if the deprivation is predictable, and resultingly is or could be the subject of state procedures, then the *Hudson-Parratt* doctrine does not apply.  Thus, the court looks to whether there are state procedures, or whether there could be state procedures, for legally effecting the type of deprivation at issue.  *See Zinermon*, 494 U.S. at 132 ("To determine whether, as petitioners contend, the *Parratt* rule necessarily precludes § 1983 liability in this case, we must ask whether predeprivation procedural safeguards could address the risk of deprivations of the kind [the respondent] alleges.").  In *Logan* and *Zinermon*, the Court held that the state could foresee, and thus could provide predeprivation process for, the need to schedule a wrongful termination hearing and the need to civilly commit the mentally ill.  By contrast, where the state would not have approved of the deprivation had it known about and been able to prevent it, the conduct is random and unauthorized.  Such was the case in *Hudson*, where noncontraband property was intentionally destroyed, and in *Parratt*, where mail was lost.  The state did not plan to lose the mail or destroy the property, and therefore could not provide predeprivation process and deserved a chance to right the

wrong through postdeprivation process. *See Macene*, 951 F.2d at 706 ("The fact that pre-deprivation procedure is impracticable in cases falling under the *Parratt* rule creates the requirement that plaintiffs in such circumstances must prove that the post-deprivation process afforded by the state is somehow inadequate to right the wrong at issue.").

Courts also ask whether the depriving act was "misconduct." *Mitchell*, 375 F.3d at 482 (citing *Vicory v. Walton*, 721 F.2d 1062, 1064 (6th Cir. 1983)). This is but another lens for examining the predictability of the deprivation. Even though the prison officials in *Hudson* and *Parratt* were acting within the scope of their duties when searching a cell or sorting the mail, the actions that led to the deprivation were misconduct: the negligent loss or intentional destruction of property they caused was not authorized by the state and therefore could not be foreseen by the state. By contrast, predictable errors involving discretionary calls are not misconduct, as the state has vested the authority to take action in its agent, and thus can predict that errors will occur.

In this case, Defendants' alleged actions in the search of Plaintiff's home were random and unauthorized. All of the damage or deprivation that Plaintiff alleges occurred after the property was lawfully seized pursuant to a warrant, which seizure Plaintiff does not contest. Although the search took place outside of a prison, Plaintiff's allegations of negligent or intentional loss or destruction closely parallel the allegations considered in *Hudson* and *Parratt*. Plaintiff, like the plaintiffs in those cases, argues that state actors, while acting in the scope of their employment, negligently or intentionally damaged his property even though that was not the task the state sent the officers to

complete. As in those cases, the state here could not anticipate the officers would deprive Plaintiff of his property, and therefore could not be expected to provide Plaintiff with predeprivation process. Thus, Plaintiff's federal claim falls squarely within the *Hudson-Parratt* doctrine.

As a consequence, summary judgment must be granted on this federal claim because Plaintiff has not alleged the inadequacy of postdeprivation due process. Moreover, it appears Michigan has satisfactory postdeprivation procedures: Plaintiff could bring suit, as he has, against the individual officers for gross negligence. He could also attempt to invoke the ancillary jurisdiction of the criminal court in which he pled guilty to misdemeanor charges, or bring an action in the Michigan court of claims. *See Riddle v. Kent Cnty. Sheriff's Dep't*, No. 1:08-cv-1228, 2009 WL 365239, at *6 (W.D. Mich. Feb. 11, 2009). Regardless of the postdeprivation remedies that are actually available to Plaintiff, it is Plaintiff's obligation to plead, or at the very least argue, that no such remedies are adequate. Plaintiff has not done this, even after being prompted to brief the issue. As there is no genuine dispute that Plaintiff has not been deprived of property without due process of law, Defendants are entitled to judgment as a matter of law.

### C. Gross Negligence

The parties present numerous arguments related to Plaintiff's state-law gross negligence count. The court dismissed this count from the suit without prejudice in a February 17, 2010, opinion and order, and therefore need not reach the state-law issues presented here.

## IV. CONCLUSION

Accordingly, IT IS ORDERED that Defendant's "Motion for Summary Judgment" [Dkt. # 49] is GRANTED on grounds not raised by a party. Fed. R. Civ. P. 56(f)(2). Judgment will follow separately.

                                                s/Robert H. Cleland
                                                ROBERT H. CLELAND
                                                UNITED STATES DISTRICT JUDGE

Dated: July 29, 2011

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, July 29, 2011, by electronic and/or ordinary mail.

                                                s/Lisa Wagner
                                                Case Manager and Deputy Clerk
                                                (313) 234-5522